**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHAEL E. PEGRAM,<br><br>    Plaintiff,<br><br>    v.<br><br>JERRY JAMGOTCHIAN,<br><br>    Defendant.<br>_____ | 3:12-cv-50-RCJ-VPC<br><br>**ORDER** |

      This is a defamation and false light action which Plaintiff Michael E. Pegram originally filed in the Ninth Judicial District of Nevada in Douglas County (case no. 11-cv-0383). (*See* Complaint (#1-1)). Defendant Jerry Jamgotchian removed the case to this Court which now has before it Plaintiff's Motion to Remand (#12), Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (#13), and Defendant's Motion to Transfer Venue (#16). For the following reasons, the Court (a) GRANTS Plaintiff's Motion to Remand (#12), and (b) DENIES Defendant's Motions to Dismiss (#13) and Transfer (#16) for lack of subject matter jurisdiction.

**BACKGROUND**

**I.    Procedural History**

      On December 22, 2011, Plaintiff Michael E. Pegram—a resident of Douglas County, Nevada—filed a Complaint in the Douglas County District Court (case no. 11-cv-0383) asserting claims for defamation and false light against Defendant Jerry Jamgotchian—a resident of California. (*See* Complaint (#1-1) at ¶¶ 6-7; *see also* Declaration of Jerry Jamgotchian (#23) at ¶ 2). On January 25, 2012, Defendant filed his Notice of Removal (#1) with the Court. Plaintiff subsequently filed his Motion to Remand (#12) on February 22, 2012;

Defendant filed his Response to Motion to Remand (#22) on March 12, 2012, and Plaintiff filed his Reply to Response to Motion to Remand (#27) on March 22, 2012. While the parties agree that they are diverse, Plaintiff contends that the amount in controversy does not exceed $75,000 and Defendant contends that it does. (Notice of Removal (#1) at 1-2; Motion to Remand (#12) at 3 n.1).

In addition to the above, Defendant filed a Motion to Dismiss for Lack of Personal Jurisdiction (#13) and a Motion to Transfer Venue (#16) on February 23, 2012. Plaintiff filed his Response to the Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Transfer Venue (#28) on March 23, 2012. Pursuant to a Stipulation and Order for Extension of Time (#34), Defendant filed his Reply to Response to Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Transfer Venue (#35) on April 6, 2012.

Neither party has asserted that any of the above filings were untimely or otherwise procedurally deficient.

**II.     The Complaint**

Plaintiff Michael Pegram's allegations of defamation and false light stem from Defendant Jerry Jamgotchian's representations that board members from the Thoroughbred Owners of California ("TOC") "have been misusing" TOC funds. (Declaration of Jerry Jamgotchian (#23) at ¶ 4; *see also* Complaint (#1-1) at ¶¶ 18-25). The TOC is a "nonprofit mutual benefit corporation" which lobbies to promote and improve horseracing. (Complaint (#1-1) at ¶ 12). Plaintiff and Defendant are both members of the TOC. (*Id.*; Declaration of Jerry Jamgotchian (#23) at ¶ 3). Plaintiff has been a member of the TOC Board since July 1, 2010, and has been chairman of the TOC Board since November 16, 2011. (Complaint (#1-1) at ¶ 12).

Plaintiff alleges that Defendant began sending emails in the fall of 2010 to multiple recipients (varying from 20-75 recipients) which accused TOC board members of misappropriating TOC funds for personal use. (*Id.* at ¶¶ 18-21). Specifically, Defendant alleged that the TOC Board misappropriated $600,000 which it purported to spend performing due diligence on the purchase of the Santa Anita Park racing track. (*Id.* at ¶¶ 13-18, 20, 24,

25). Plaintiff contends that the Board spent the $600,000 on legitimate expenditures which, in any event, predated his involvement with the TOC Board. (*Id.* at ¶¶ 18, 29). Plaintiff further asserts that as a result of Defendant's allegations, the TOC provided Defendant with its financial records and that the California Horse Racing Board ("CHRB") investigated the TOC for misappropriation. (*Id.* at ¶¶ 19, 22). According to Plaintiff, neither Defendant nor the CHRB found support for allegations of misappropriation. (*Id.* at ¶¶ 19, 23).

Plaintiff further contends that, notwithstanding the CHRB's findings, Defendant continued to distribute emails (this time to between 80 and 148 recipients) which accused the TOC Board and Plaintiff of stealing TOC funds. (*Id.* at ¶¶ 24-25).

In his Complaint, Plaintiff asserts that he is especially vulnerable to Defendant's alleged misrepresentations because the Nevada Gaming Commission, which has licensed Plaintiff to operate two casinos, may restrict, revoke, or suspend his license for immoral behavior which reflects poorly on Nevada or its gaming industry. (*Id.* at ¶¶ 33-37). Plaintiff further avers that "Defendant's [m]isrepresentations have impugned" his "stellar" reputation which Plaintiff purportedly relies on as a McDonald's restaurant franchisee, a member of the Board of Directors for Skagit Bank, and an owner of thoroughbred horses. (*Id.* at ¶ 40).

In terms of harm, Plaintiff speculatively contends that Defendant's statements "may have harmed and could continue to harm" his gaming and other business interests. (*Id.* at ¶¶ 38, 40). Similarly, Plaintiff's "primary business interests…could be disadvantaged and terminated if he does not defend and uphold his reputation." (*Id.* at ¶ 4).

More concretely, in asserting his claim for defamation, Plaintiff argues that his "[d]amages are presumed" because the facts of his case "constitute defamation *per se*." (*Id.* at ¶ 47). Plaintiff, in his claim for false light, contends that he "has suffered damages including but not limited to embarrassment and personal humiliation." (*Id.* at ¶ 53). The defamation and false light claims both include an allegation that Defendant acted with express or implied malice and is therefore liable for punitive damages. (*Id.* at ¶¶ 48, 54).

Plaintiff's prayer for relief requests compensatory damages exceeding $10,000, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and any other just and

3

proper relief. (*Id.* at 12).

## LEGAL STANDARD

Federal courts, as courts of limited jurisdiction, must strictly construe their jurisdiction. *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 998 (9th Cir. 2007) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)). As such, "[w]here doubt regarding the right to removal exists, a case should be remanded to state court." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

When a complaint does not specify the dollar amount in controversy, the removing defendant must prove by a preponderance of evidence that the amount in controversy exceeds $75,000. *Matheson*, 319 F.3d at 1090. It is the amount in controversy <u>at the time of removal</u> which governs. *Id.* The amount in controversy can include compensatory damages, punitive damages, and attorneys' fees (when permissible),[1] but not interest and costs. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) (amount in controversy includes punitive damages); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir. 1998) (when authorized by law, attorneys' fees can be part of the amount in controversy); 28 U.S.C. § 1332(a) (amount in controversy excludes costs and interest).

To determine whether the removing defendant has met his burden, the Court considers the facts alleged in the removal petition as well as any "'summary-judgment-type evidence relevant to the amount in controversy.'" *Matheson*, 319 F.3d at 1090 (quoting *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335-36 (5th Cir.1995)). The removing defendant must support his claim for federal jurisdiction with specific facts; conclusory or speculative arguments are insufficient. *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992).

---

[1] Nevada statutes allow judgments to include attorneys' fees when (1) a judgment is for $20,000 or less, (2) when the opposing party's claim or defense "was brought or maintained without reasonable ground or to harass the prevailing party," or (3) when the opposing party rejects an Offer of Judgment and fails to obtain a more favorable result. Nev. Rev. Stat. §§ 17.115(4)(d)(3), 18.010 (2); Nev. R. Civ. P. 68(f).

4

A settlement offer can be relevant evidence of the amount in controversy, provided that the offer reflects a reasonable value for the case. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002). A party can also present jury verdicts from factually similar cases as evidence of the amount in controversy. *McCaa v. Massachusetts Mut. Life Ins. Co.*, 330 F. Supp. 2d 1143, 1149 (D. Nev. 2004) (allowing jury verdicts as an indicator for punitive damages).

**DISCUSSION**

**I.  Summary of Parties' Arguments Regarding Remand**

In his Notice of Removal, Defendant contends that he and Plaintiff are diverse parties[2] and that the amount in controversy exceeds $75,000 because, according to Plaintiff's Complaint, Defendant's statements tended to harm Plaintiff's reputation, which is connected to substantial business interests (two Nevada casinos, 26 McDonald's restaurants, and thoroughbred horses). (Notice of Removal (#1) at 1-2). Therefore, because of Plaintiff's "alleged prominence and standing," the damage to his reputation exceeds $75,000. (*Id.* at 2).

Plaintiff's Motion to Remand contends that Defendant failed to show by a preponderance of evidence that the amount in controversy exceeds $75,000. According to Plaintiff, Defendant's Notice of Removal conclusorily argues that the amount in controversy exceeds $75,000 due to Plaintiff's "prominence and standing." (Motion to Remand (#12) at 5). Plaintiff asserts that Defendant admitted he cannot demonstrate that the amount in controversy exceeds $75,000 when he stated "'the exact amount Plaintiff is seeking in damages is presently unknown.'" (*Id.* (quoting Notice of Removal (#1) at 2 n.1)). Furthermore, Plaintiff argues that Defendant was unresponsive to an Offer of Judgment for $45,000 (plus an apology, retraction, and future non-disparagement), and that Defendant's failure to respond demonstrates that the amount in controversy is less than $75,000. (*Id.* at 6). Lastly, Plaintiff asserts that he is currently unaware of any economic damage to himself or his businesses as a result of Defendant's remarks. (*Id.* at 5-6). As such, Defendant cannot simply rely on Plaintiff's "prominence and standing" to establish the amount in controversy at

---

[2] Plaintiff agrees that the parties are diverse. (Motion to Remand (#12) at 3 n.1).

5

the time of removal. (*Id.* at 5).

Defendant's Response to Motion to Remand argues that Plaintiff's Complaint clearly shows that the amount in controversy exceeds $75,000. According to Defendant, the Complaint alleges that Plaintiff's reputation is his most valuable asset and an important part of his considerable business interests. (Response to Motion to Remand (#22) at 10-12). Because Plaintiff's business interests are likely worth millions, and because Plaintiff's reputation is connected to, and allegedly more valuable than those business interests,[3] the amount in controversy easily exceeds $75,000. (*Id.*). Furthermore, Defendant argues that in light of jury awards for punitive damages in factually similar cases, the amount in controversy exceeds $75,000. (*Id.* at 13-16). Defendant also asserts that the amount in controversy includes Plaintiff's attorneys' fees because Plaintiff served an Offer of Judgment in accordance with N.R.S. § 17.115(4), and explains that attorneys' fees in this case "have likely already exceeded $15,000." (*Id.* at 16-17). Finally, Defendant contends that Plaintiff's unwillingness to expressly limit damages to $75,000 or less demonstrates that the amount in controversy exceeds $75,000. (*Id.* at 17-18).

Plaintiff's Reply to Response to Motion to Remand asserts that Defendant still has not shown by a preponderance of the evidence that the amount in controversy exceeds $75,000. Specifically, Plaintiff argues that Defendant judges the amount in controversy by the total value of Plaintiff's assets instead of the damage to Plaintiff's reputation, which is the correct measure. (Reply to Response to Motion to Remand (#27) at 3-5). Furthermore, punitive damages are so tenuous and speculative that Defendant has failed to show, by a preponderance of evidence, that the amount in controversy exceeds $75,000. (*Id.* at 6). Indeed, this is more decidedly so because Defendant has cited jury verdicts which vary greatly in geographic location, underlying facts, and judgment amount. (*Id.*). Plaintiff also argues that

---

[3] Defendant derives this argument from ¶ 33 of Complaint (#1-1) which alleges that "Mr. Pegram's reputation is his most valuable and essential asset." (*See* Response to Motion to Remand (#22) at 10-12).

Defendant's counsel has used his own unsubstantiated figures about Plaintiff's attorneys' fees in an attempt to augment the amount in controversy, and that this is insufficient to satisfy Defendant's burden. (*Id.* at 6-7). Plaintiff advances his $45,000 Offer of Judgment as the only fact-based evidence of the amount in controversy, and he further contends that Defendant has done nothing to show otherwise. (*Id.* at 7-8). Lastly, Plaintiff argues that his unwillingness to stipulate to damages under $75,000 cannot establish the amount in controversy. (*Id.* at 8-9). Plaintiff contends that requiring such a stipulation impermissibly shifts the burden of proving the amount in controversy to Plaintiff. (*Id.*).

## II.   Summary of Remand Analysis

Here, the Court grants Plaintiff Michael Pegram's Motion to Remand (#12) because Defendant Jerry Jamgotchian has failed to show by a preponderance of evidence that the amount in controversy at the time of removal exceeded $75,000. The Court looks to (1) the facts alleged in Defendant's Notice of Removal and (2) any summary-judgment-type evidence to determine whether the Defendant has carried his burden. *Matheson*, 319 F.3d at 1090. In this case, Defendant's Notice of Removal contains only conclusory statements, and the summary-judgment-type evidence presented is insufficient to show the amount in controversy exceeds $75,000.

Because the Court grants Plaintiff's Motion to Remand (#12), it denies Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (#13) and Defendant's Motion to Transfer Venue (#16) for lack of subject matter jurisdiction.

## III.   The Notice of Removal

The Court considers the facts alleged in a removal petition to determine whether the amount in controversy exceeds $75,000. *Matheson*, 319 F.3d at 1090. The removing defendant must support his claim for federal jurisdiction with specific facts, not conclusory or speculative arguments. *Gaus*, 980 F.2d at 567.

Here, Defendant's Notice of Removal consists of only conclusory statements that the amount in controversy exceeds $75,000. Defendant's Notice of Removal first makes the conclusory statement that "the matter in controversy exceeds the sum of $75,000." (Notice

7

of Removal (#1) at 2). Defendant also quoted a portion of Plaintiff's Complaint alleging defamation *per se* which stated that Defendant's representations tended to injure Plaintiff's reputation as a competent executive and as a man of honesty and integrity, which Plaintiff's business interests require. (*Id.*). Defendant went on to explain that "[g]iven the alleged prominence and standing of Plaintiff, the purported damages to Plaintiff's reputation will exceed $75,000." (*Id.*). However, it is conclusory to state that Plaintiff's status ensures the amount in controversy will exceed $75,000. Defendant does not explain how to measure the extent of Plaintiff's reputational harm, and he only hints at a connection between Plaintiff's reputational harm and his business interests.[4] (*Id.*).

Because the removing defendant has failed to present specific facts in his Notice of Removal which support federal court jurisdiction, he can only establish federal jurisdiction through summary-judgment-type evidence. *See Matheson*, 319 F.3d at 1090.

**IV.  Summary-Judgment-Type Evidence**

    **A.  Defendant's Summary-Judgment-Type Evidence Regarding Plaintiff's Assets and Interests Is Not Relevant to the Amount in Controversy Because it Does Not Show That Plaintiff's Alleged Reputational Injury Affected Those Assets and Interests**

Here, Plaintiff's Complaint does allege the *potential* for great harm because his reputation is integral to his extensive business interests. However, the Court determines the amount in controversy at the time of removal. *See Matheson*, 319 F.3d at 1090. At the time of removal, Plaintiff had not alleged damages to his business interests or assets, and in fact asserted that he was currently unaware of any economic damages whatsoever. (Motion to Remand (#12) at 5-6). Defendant presented no evidence connecting Plaintiff's alleged reputational injury to his business interests or assets. As such, Defendant has failed to show that Plaintiff's assets and business interests are relevant to the amount in controversy at the time of removal.

Defendant attempts to quantify the amount in controversy by connecting the alleged

---

[4] This is probably because Plaintiff has pled the *potential* for economic damages, but has not pled that his interests have suffered any present harm.

8

reputational damages to Plaintiff's assets and business interests. Specifically, he tries to do so through an allegation in Plaintiff's Complaint that "Mr. Pegram's reputation is his most valuable and essential asset." (Response to Motion to Remand (#22) at 10-12 (citing Complaint (#1-1) at ¶ 33)). Therefore, according to Defendant, if Plaintiff's reputation is more valuable than all his assets, which are easily worth millions, then the amount in controversy surely exceeds $75,000. However, this argument seems to posit that a rhetorical flourish in Plaintiff's Complaint can establish federal court jurisdiction. Plaintiff addresses this argument in his Motion to Remand wherein he states that he is currently unaware of any economic damages to himself or his businesses. (Motion to Remand (#12) at 5-6). In other words, Plaintiff contends that at the time of removal his reputational damages had not prejudiced the value of his assets or business interests. Conversely, Defendant has put forth no evidence linking the alleged reputational damages to Plaintiff's business interests (i.e. documentation showing that the Nevada Gaming Commission suspended Plaintiff's gaming license as a result of Defendant's emails).

While Plaintiff's Complaint certainly asserts that Defendant's alleged misrepresentations *could* do substantial harm to Plaintiff's business interests, it is the amount in controversy at the time of removal which governs. There is no evidence that at the time of removal Defendant's allegedly defamatory statements had in any way damaged Plaintiff's business interests; therefore the value of Plaintiff's assets and interests are not useful in determining the amount in controversy.

      **B.    While Defendant Presents Jury Verdicts as Evidence That Punitive Damages Will Cause the Amount in Controversy to Exceed $75,000, the Verdicts Are Too Diverse in Location, Facts, and Outcome to Satisfy Defendant's Burden**

A removing defendant can present jury verdicts to establish the effect of punitive damages on the amount in controversy. *McCaa*, 330 F. Supp. at 1149 (D. Nev. 2004). However, the jury verdicts should come from factually similar cases. *Id.*

Defendant presents jury verdicts which are too diverse and deficient in key factual components to create a meaningful point of reference as to how punitive damages may affect

9

the amount in controversy here. Defendant presents six jury verdicts from six different jurisdictions (Alabama, New York, Texas, Illinois, Pennsylvania, and Ohio), with very disparate judgment amounts ($5 million, $188 million, $700,002, $130,000, $210,000, and $1,000,000), and varying amounts of punitive damages ($3 million, $150 million, $350,000, $100,000, $60,000, and $250,000). (Response to Motion to Remand (#22) at 13-16). The diversity of the cases here does little to help frame the amount in controversy. Additionally, Defendant cites cases which contain important factual discrepancies: (1) the court granted JNOV on one jury verdict that Defendant cites,[5] and (2) four of the six cases Defendant cites involved damage to economic interests, as opposed to purely reputational damages.[6]

However, it is important to note that Plaintiff claims damages which are exceedingly difficult to quantify: (1) presumed damages for defamation *per se*, (2) damages for embarrassment and personal humiliation, and (3) punitive damages. In such a case, jury verdicts (in addition to settlement offers, discussed below) may be some of the best evidence about the amount in controversy. Still, the jury verdicts presented in Defendant's Response to Motion to Remand fail to show that the amount in controversy more likely than not exceeds $75,000.

Although Defendant presents jury verdicts as summary-judgment-type evidence that the amount in controversy here exceeds $75,000, the jury verdicts lack sufficient factual similarity to this case to provide meaningful guidance for the Court.

### C. Defendant Has Failed to Show That Plaintiff's Claim for Attorneys' Fees Will Cause the Amount in Controversy to Exceed $75,000

The amount in controversy may include attorneys' fees when those fees are authorized by law. *Galt G/S*, 142 F.3d at 1155. In the context of attorneys' fees, the removing defendant must still provide summary-judgment-type evidence and specific facts, as opposed to conclusory or speculative arguments, to support federal court jurisdiction. *Id.*; *Matheson*, 319 F.3d at 1090; *Gaus*, 980 F.2d at 567.

---

[5] *See* Response to Motion to Remand (#22-2) at 12.

[6] *See id.* at 11; *see also* Response to Motion to Remand (#22-3) at 2, 7-8, 13-14.

Here, Defendant claims that even if the $45,000 Offer of Judgment amounts to reasonable compensation for Plaintiff's damages, "there is no question that [Plaintiff's] attorneys [sic] fees will more likely than not exceed $30,000." (Response to Motion to Remand (#22) at 16). Defendant further asserts that Plaintiff's fees "have likely already exceeded $15,000" and that Plaintiff's counsel "no doubt" has an hourly fee which "exceeds $350." (*Id.* at 16-17). Plaintiff correctly points out that only those attorneys' fees incurred at the time of removal are relevant to the amount in controversy here. *See Matheson*, 319 F.3d at 1090; *see also Conrad Associates v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1200 (N.D. Cal. 1998). As such, Defendant's assertion that attorneys' fees will exceed $30,000 is irrelevant. Furthermore, Defendant's bald averments that Plaintiff's fees have likely exceeded $15,000 and that Plaintiff's counsel must charge at least $350 per hour are too speculative and conclusory to accept as summary-judgment-type evidence. *See Conrad Associates* 994 F. Supp. at 1199-1200.

Defendant has not carried his burden here because he only presents conclusory and speculative statements as evidence that attorneys' fees will cause the amount in controversy to exceed $75,000.

### D. Defendant Fails to Support His Claim That He Established the Required Amount in Controversy by Pointing Out That Plaintiff Has Refused to Stipulate to Damages under $75,000

The removing defendant bears the burden of showing that federal jurisdiction is appropriate by a preponderance of evidence. *Matheson*, 319 F.3d at 1090.

Defendant argues that because Plaintiff refuses to stipulate to limit monetary damages to $75,000, the amount in controversy must be in excess of $75,000. While the difficulty of quantifying damages in this case may encourage creative enumeration methodologies, Plaintiff compellingly argues that using his refusal to stipulate as evidence shifts the burden of proof for federal jurisdiction away from the removing defendant and onto the plaintiff seeking remand. (Reply to Response to Motion to Remand (#27) at 8).

In addition, Defendant supports his proposition using only persuasive precedent from federal district courts in Arizona, Louisiana, and Texas. Upon closer inspection, these cases

11

do not support Defendant's contention as strongly as he may hope. In fact, *at best* they support the idea that the Court may use a refusal to stipulate as non-dispositive evidence. Two of the four cases explicitly state that the removing defendant had carried his burden of proof even without accounting for the plaintiff's refusal to stipulate. *See Ansley v. Metro. Life Ins. Co.*, 215 F.R.D. 575, 578 (D. Ariz. 2003); *see also Del Real v. Healthsouth Corp.*, 171 F. Supp. 2d 1041, 1043 (D. Ariz. 2001). The other two cases are less about a failure to stipulate and more about a plaintiff's judicial admission that the amount in controversy likely exceeds the jurisdictional limit. *See Johnson v. Dillard Dept. Stores, Inc.*, 836 F. Supp. 390, 395 (N.D. Tex. 1993); *see also Freeman v. Witco, Corp.*, 984 F. Supp. 443, 448 (E.D. La. 1997). Defendant's assertion is also dubious because there is conflicting persuasive precedent on the issue. *See Conrad Associates* 994 F. Supp. at 1199 (failure to stipulate to damages under $75,000 does not conclusively establish the amount in controversy because (1) precedent in the Northern District of California holds otherwise and (2) parties cannot stipulate to federal court subject matter jurisdiction).

Defendant failed to support his assertion that Plaintiff's refusal to stipulate to less than $75,000 in monetary damages conclusively establishes the amount in controversy. Based on the cases cited by Defendant, Plaintiff's refusal to stipulate could only be used, if at all, as non-dispositive evidence (provided that the Court does not agree with Plaintiff's argument that doing so would impermissibly shift the burden of proof to the plaintiff and provided that the Court is not persuaded by the *Conrad* Court which found such evidence inappropriate because parties cannot stipulate to federal subject matter jurisdiction). *See Ansley*, 215 F.R.D. at 578; *see also Del Real*, 171 F. Supp. 2d at 1043; *Conrad Associates* 994 F. Supp. at 1199.

**E.     Plaintiff's Offer of Judgment for $45,000 Is the Only Meaningful Evidence Presented by Either Party as to the Amount in Controversy**

Reasonable settlement offers can be relevant evidence of the amount in controversy in a case. *Cohn*, 281 F.3d at 840.

As described above, Defendant has failed to produce evidence which shows, by a

preponderance of evidence, that the amount in controversy exceeds $75,000. Plaintiff, on the other hand, has produced an Offer of Judgment for $45,000 plus a formal apology, retraction of the allegedly defamatory statements, and future non-disparagement. (Offer of Judgment (#12-2) at 2-3). Since settlement offers are relevant to the amount in controversy, the Court may consider this as evidence. *See Cohn*, 281 F.3d at 840. Defendant points out that the settlement offer does not quantify the value of the apology, retraction, and future non-disparagement. While true, Defendant has not put forth any cognizable evidence to rebut the $45,000 figure. As detailed above, Defendant's Notice of Removal presents only conclusory statements, the value of Plaintiff's assets and business interests are irrelevant to the amount in controversy here, the jury verdicts Defendant provided are too diverse and factually dissimilar to provide meaningful guidance about the amount in controversy, Defendant's claims regarding attorneys' fees were too conclusory and speculative to establish the amount in controversy, and Defendant could not adequately support his contention that Plaintiff's refusal to stipulate to damages under $75,000 conclusively established the amount in controversy.

Though Plaintiff's Offer of Judgment is an imperfect measure, it stands as the only quantifiable evidence of the amount in controversy. Therefore, the Court grants Plaintiff's Motion to Remand (#12) because Defendant has not demonstrated by a preponderance of evidence that the amount in controversy in this case exceeds $75,000.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Plaintiff's Motion to Remand (#12) is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (#13) and Defendant's Motion to Transfer Venue (#16) for lack of subject matter jurisdiction are DENIED for lack of subject matter jurisdiction.

DATED: September 6, 2012.

_____
UNITED STATES DISTRICT JUDGE